# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

THE INCLUSIVE COMMUNITIES     §
PROJECT, INC.,     §
    §
        Plaintiff,     §
    §
v.     §       Civil Action No. 3:17-CV-206-K
    §
LINCOLN PROPERTY COMPANY,     §
*et. al.*,     §
    §
        Defendants.     §

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant Brick Row Apartments LLC's Motion to Take Judicial Notice of Certain Data Produced by the U.S. Census Bureau (Doc. No. 14), and Defendant Brick Row Apartments LLC's Rule 12(b)(6) Motion to Dismiss (Doc. No. 15). Plaintiff The Inclusive Communities Project, Inc. ("ICP") brought this lawsuit against Defendant Brick Row Apartments LLC ("Brick Row") and other Defendants –Defendant Lincoln Property Company, Defendant Legacy Multifamily North III, LLC, Defendant CPF PC Riverwalk LLC, and Defendant HLI White Rock LLC – alleging that Defendants' practice of refusing to rent to or negotiate with Section 8 housing voucher holders constitute violations of the disparate impact and disparate treatment standard under the Fair Housing Act, 42 U.S.C. 3601, *et. seq.*

1

Defendant Brick Row contends that this Court should dismiss Plaintiff ICP's Complaint as to Defendant Brick Row.

After careful consideration of the motions, the response to Defendant Brick Row's motion to dismiss, the reply to Plaintiff ICP's response to Defendant Brick Row's motion to dismiss, the supporting appendices, and the applicable law, the Court **GRANTS** (1) Defendant Brick Row Apartments LLC's Motion to Take Judicial Notice of Certain Data Produced by the U.S. Census Bureau, and (2) Defendant Brick Row Apartments LLC's Rule 12(b)(6) Motion to Dismiss. Plaintiff ICP's disparate impact and disparate treatment claims against Defendant Brick Row are dismissed. Plaintiff ICP's Complaint is dismissed as to Defendant Brick Row.

## I.    Factual Background

This case is about Defendant Brick Row's and the other Defendants' practice of refusing to participate in the federal Housing Choice Voucher Program, commonly known as the "Section 8" housing voucher program. This practice of refusing to rent to or negotiate with Section 8 housing voucher holders is alleged to be implemented by Defendants in high opportunity, predominantly White, non-minority areas of the Dallas, Texas metropolitan area. Defendant Lincoln Property Company manages all of the Defendants' rental properties, including Defendant Brick Row's apartment complex in Richardson, Texas, Brick Row Urban Village. Plaintiff ICP asserts in its Complaint (Doc. No. 1) Defendants' practice of refusing to rent to or negotiate with

Section 8 housing voucher holders is discriminatory since African American or Black families are the predominant participants in the Section 8 housing voucher program.

### a. Plaintiff ICP and the Section 8 Housing Voucher Program

Plaintiff ICP is a nonprofit organization that seeks to create and maintain racially and economically inclusive communities. Plaintiff ICP pursues expansion of fair and affordable housing for low income families and attempts to remedy harmful practices that perpetuate discrimination and segregation in the community. As part of Plaintiff ICP's fair housing focused initiative, Plaintiff ICP provides counseling, financial assistance, and other services for low income families. Plaintiff ICP helps low income families obtain housing in higher opportunity areas that have lower poverty rates, higher median family incomes, and higher ranking public schools.

One of the main tools that Plaintiff ICP helps its client use to achieve housing equality is the federal Section 8 housing voucher program. Plaintiff ICP's Section 8 housing voucher clients are predominantly African American or Black families. The Section 8 housing voucher program is a subsidy provided to landlords who are willing to rent dwelling units to low income households. The Section 8 housing voucher program is the largest national rent assistance program for low income households. The subsidy from the program given to the landlords pays the difference between the rental amount and the amount that the voucher household is required to pay under the Section 8 housing voucher program, which ranges between 30% and 40% of the

household's income.   Landlord participation in the Section 8 housing voucher program is voluntary rather than mandatory.

Predominantly African American or Black families obtain and use Section 8 housing vouchers.  The Dallas Housing Authority administers the largest number of Section 8 housing vouchers of any agency in the Dallas, Texas metropolitan area. Out of the 17,000 plus vouchers Dallas Housing Authority issues, 86% of the voucher holders are alleged to be African American or Black families, and 6% are non-minority families.   According to the U.S. Housing & Urban Development Department ("HUD") 2015 statistics, of the 30,745 Section 8 housing voucher population served by all of the housing authorities in the Dallas-Plano-Irving TX Metropolitan Division, African American or Black families are alleged to make up 81% of the voucher population, Hispanic families are alleged to make up 6% of the voucher population, and White non-Hispanic families are alleged to make up 10% of the voucher population.  According to the U.S. Office of Management and Budget, the city of Richardson, Texas, where Brick Row Urban Village is located, is included in the Dallas-Plano-Irving TX Metropolitan Division.

Plaintiff ICP advises, counsels, and seeks to provide financial assistance to African American or Black families that participate in the Section 8 housing voucher program administered by the Dallas Housing Authority.  For example, Plaintiff ICP provides mobility assistance to all Section 8 voucher households that want to move to

higher opportunity communities in the Dallas area. Mobility assistance involves Plaintiff ICP negotiating with landlords on behalf of its Section 8 voucher clients, if necessary.

Plaintiff ICP also provides financial assistance to its Section 8 housing voucher clients. Plaintiff ICP offers incentive payments, to serve as a sublessor, or to serve as a third party guarantor to encourage landlords to participate in the Section 8 housing voucher program. The incentive payments Plaintiff ICP offers to landlords are for the purpose of alleviating possible business concerns that landlords might have when renting to Section 8 housing voucher households. Plaintiff ICP sent letters to Defendant Lincoln Property Company attempting to encourage Defendant Lincoln Property Company to accept Section 8 housing vouchers for properties it manages – Parkside at Legacy, Park Central at Flower Mound, White Rock Lake Apartment Villas, McKinney Uptown, and Brick Row Urban Village (owned by Defendant Brick Row). In the letters to Defendant Lincoln Property Company, Plaintiff ICP proposed participation in Plaintiff ICP's Third Party Guarantor Program or Sublease Program.

**b. The Brick Row Urban Village Apartment Complex and Its Section 8 Policy**

Defendant Brick Row owns the Brick Row Urban Village apartment complex in Richardson, Texas. Tenants began to be occupy Brick Row Urban Village in April 2010. Defendant Brick Row's apartment complex is located in one of eight

census tracts in the 75081 zip code. Brick Row Urban Village has 500 rental units. Plaintiff ICP alleges that black renters entail 11% of the 532 rental dwelling units in the census tract where the Brick Row Urban Village apartment complex is located. In the census tract where Brick Row Urban Village is located, there are 45 voucher households available according to the HUD 2015 statistics. The majority of Section 8 voucher households in the census tract where Brick Row Urban Village is located are alleged to be in single family or semi-detached structures, and not in apartment complexes. In the 75081 zip code, which has eight different census tracts, there are 301 Section 8 housing voucher households available, according to the HUD 2015 statistics. In the city of Richardson, Texas there are 376 Section 8 housing voucher households available, according to HUD 2015 statistics. The HUD user dataset, provided by Defendant Brick Row in the appendix to its motion to dismiss (Doc. No. 17), which Plaintiff ICP does not object to the Court considering (Doc. No. 21), conveys the usage and availability of subsidized housing in the city of Richardson. The HUD dataset reflects that as of April, 17, 2017, 376 Section 8 housing units were available in the city of Richardson and that 90 percent of the available Section 8 voucher households in the city of Richardson were occupied. The HUD dataset also reflects that 68 percent of voucher holders in the city of Richardson are Black or African American households.

Defendant Lincoln Property Company manages the Brick Row Urban Village apartment complex for Defendant Brick Row.  Defendant Lincoln Property Company is the property manager for all of the Defendants that are parties to this lawsuit.  The Defendants' properties, which are alleged to be in high opportunity, predominantly White non-minority, areas, are alleged to have adopted and implemented the practice of their property manager Defendant Lincoln Property Company of refusing to participate in the Section 8 housing voucher program.  Plaintiff ICP alleges that Defendant Lincoln Property Company states in its advertisements in a variety of ways that its communities, including Brick Row Urban Village, will not accept Section 8 housing vouchers.  The advertisements by Defendant Lincoln Property Company state that

- Our community is not authorized to accept housing vouchers;

- Our community is not authorized to accept Section 8 housing;

- Our community is not authorized to accept any government subsidized rent programs;

- No 2nd chance leasing, and no vouchers accepted.

In March 2016, Defendant Lincoln Property Company's President and Chief Executive Officer received a letter regarding the Brick Row Urban Village apartment complex from Plaintiff ICP encouraging Defendant Lincoln Property Company to reconsider its position of not accepting Section 8 housing vouchers.  Plaintiff ICP

noted in the letter that it "is a local non-profit entity that works with families using a housing voucher to rent housing in high opportunity areas of the Dallas Metroplex." The letter also described how Plaintiff ICP offers incentive payments to encourage landlords to rent to its Section 8 voucher clients, and Plaintiff ICP's Third Party Guarantor Program and Sublease Program.

For the Third Party Guarantor Program that Plaintiff ICP offered, Plaintiff ICP proposed to serve as the third-party guarantor for its Section 8 voucher clients using the standard Texas Apartment Association Lease Contract Guaranty Form. Plaintiff ICP represented that it would be willing to add provisions to the Lease Contract Guaranty form to cover any losses due to possible housing authority delays in processing the Section 8 housing voucher of the voucher household. An incentive payment of one month's rent for each Section 8 housing voucher tenant selected to be a tenant at Brick Row Urban Village was also offered to Defendant Brick Row if it participated in the Third Party Guarantor Program.

Plaintiff ICP alternatively offered a Sublease Program to try to entice Defendant Brick Row to rent to its Section 8 voucher clients. Plaintiff ICP began the proposal by stating that the President of the Apartment Association of Greater Dallas endorses the merit of the Sublease Program and has offered to work with Plaintiff ICP. Defendant Brick Row would still ultimately make the decision of whether to rent to the Section 8 housing voucher tenant. The responsibility of finding and

proposing qualified Section 8 voucher tenants to Defendant Brick Row would fall solely on Plaintiff ICP.  For the Sublease Program, Plaintiff ICP would lease three to five units in the Brick Row Urban Village apartment complex.  As a sublessor, similar to the role of a corporate entity, Plaintiff ICP would pay the agreed lease amount in a timely manner, respond to all tenant issues, and, if necessary, evict the respective Section 8 housing voucher tenants.  If the Section 8 Voucher Program tenant, or the housing authority responsible for the subsidy to the landlord was late or delinquent on the rent payment, Plaintiff ICP offered to cover the unpaid portion of the payment under the lease contract.  Plaintiff ICP also offered a financial incentive of one month's contract rent for each unit that Defendant Brick Row would agree to lease to a Section 8 Housing Voucher tenant.

Defendant Brick Row contends that it did not know of the contents contained in this letter or receive any communications from Plaintiff ICP until the filing of this lawsuit in January 2017.  In its motion to dismiss, Defendant Brick Row states that, "Brick Row never received any communications from ICP prior to January 23, 2017 when the lawsuit was filed."  Defendant Brick Row's agent, Defendant Lincoln Property Company, however, received the letter regarding the Brick Row Urban Village apartment complex from Plaintiff ICP.  Neither Defendant Lincoln Property Company nor Defendant Brick Row responded to Plaintiff ICP's March 2016 letter proposing the Third Party Guarantor Program and Sublease Program.

### c. Plaintiff ICP's Discrimination Claims Against Defendant Brick Row

Because of the policy implemented at Brick Row Urban Village of refusing to negotiate with or rent to Section 8 housing voucher holders, Plaintiff ICP brought this lawsuit in January 2017 against Defendant Brick Row and other Defendants alleging violations of the disparate treatment and disparate impact standard. Under federal law and Texas law, landlords have the right to participate in or not to participate in the Section 8 housing voucher program. *See* 42 U.S.C. § 1437f(o)(6)(B); TEX. LOCAL GOV'T CODE § 250.007; *see also Austin Apartment Ass'n v. City of Austin*, 89 F. Supp. 3d 886, 890 (W.D. Tex. 2015) ("Federal law does not require landlords to accept housing vouchers, and landlords who do accept vouchers are not required to approve tenants merely because they are voucher holders"); *Salute v. Stratford Greens Garden Apartments*, 136 F.3d 293, 300 (2d Cir. 1998) ("We think that the voluntariness provision of Section 8 reflects a congressional intent that the burdens of Section 8 participation are substantial enough that participation should not be forced on landlords"). The optional nature of the Section 8 housing voucher program, however, does not automatically make a landlord immune from violating the Fair Housing Act. *See Graoch Assocs. #33, L.P. v. Louisville/Jefferson Cty. Metro Human Relations Comm'n*, 508 F.3d 366, 377 (6th Cir. 2007) ("The mere fact that a landlord *often* can withdraw from Section 8 without violating the terms of Section 8

or [sic] the FHA does not mean that withdrawal from Section 8 *never* can constitute a violation of the FHA.") (emphasis in original).

Plaintiff ICP asserts that Defendant Brick Row's policy achieves no legitimate interests and violates the disparate impact standard under the Fair Housing Act, 42 U.S.C. § 3604(a). In Plaintiff ICP's Complaint, Plaintiff ICP alleges that Defendant Brick Row's policy causes a disproportionate harm to African American or Black households because the vast majority of Section 8 housing voucher families are African American or Black. The allegations of Plaintiff ICP point to a limited amount of places where Section 8 vouchers are accepted in the census tract where Brick Row Urban Village is located as proof of the adverse impact that Defendant Brick Row's policy has on African American or Black families. In Plaintiff's Response Brief (Doc. No. 22) to Defendant Brick Row's Motion to Dismiss (Doc. No. 15), Plaintiff ICP states that "[t]he policy perpetuates racial segregation in the neighborhood."

Plaintiff ICP asserts that Defendant Brick Row's failure to accept and respond to Plaintiff ICP's proposal of the Third Party Guarantor Program and Sublease Program insures the merit of Plaintiff ICP's disparate impact claim. Plaintiff ICP states that both the Third Party Guarantor Program and Sublease Program constitute less discriminatory alternatives that Defendant Brick Row could have considered to rent to Section 8 voucher holders. The rejection of these proposed less

discriminatory alternatives, Plaintiff ICP contends, serves as proof of Defendant Brick Row's violation of the disparate impact standard.

In Plaintiff ICP's Complaint, Plaintiff ICP also claims that Defendant Brick Row's refusal to negotiate with or rent to Plaintiff ICP constitutes disparate treatment under 42 U.S.C. § 3604(a) and 42 U.S.C. § 1982. Plaintiff ICP alleges that Defendant Lincoln Property Company's policy, implemented by Defendant Brick Row, is because of race or color of Plaintiff ICP's voucher clients rather than being related to legitimate business concerns of Defendant Brick Row.

Plaintiff ICP also claims that Defendant Lincoln Property Company's advertisements that state Defendant Lincoln Property Company's refusal to negotiate with or rent to Section 8 families are racially discriminatory and violate 42 U.S.C. § 3604(c). Section 3604(c) of the Fair Housing Act prohibits advertisements for rental dwellings that show preference or discriminate based on "race, color, religion, sex, handicap, familial status, or national origin." Plaintiff ICP alleges that Defendant Lincoln Property Company violated 42 U.S.C. § 3604(c) of the Fair Housing Act because Defendant Lincoln Property Company caused the following advertisements to be made that showed hostility to Section 8 voucher holders that state:

- Our community is not authorized to accept housing vouchers;

- Our community is not authorized to accept Section 8 housing;

- Our community is not authorized to accept any government subsidized rent programs; and

- No 2nd chance leasing, and no vouchers accepted.

Plaintiff ICP also brings a disparate treatment claim under 42 U.S.C. § 3604(a) and 42 U.S.C. § 1982 against Defendant Lincoln Property Company. Plaintiff ICP alleges this second disparate treatment claim solely against Defendant Lincoln Property Company. Plaintiff ICP contends that Defendant Lincoln Property Company's policy of refusing to rent to or negotiate with Section 8 voucher holders is because of the race or color of the Section 8 voucher holders, which would violate the disparate treatment standard under the Fair Housing Act.

Defendant Brick Row's motion to dismiss moved to dismiss two of the four claims against alleged in Plaintiff ICP's Complaint which include: (1) the refusal to negotiate with or rent to voucher households under the disparate impact standard of 42 U.S.C. § 3604(a), and (2) the refusal to negotiate with or rent to Plaintiff ICP under the disparate treatment standard of 42 U.S.C. § 3604(a) and 42 U.S.C. § 1982. The two claims that Defendant Brick Row moved to dismiss are the two claims against Defendant Brick Row in this lawsuit.

The Court **GRANTS** Defendant Brick Row's motion to dismiss and dismisses Plaintiff ICP's Complaint as to Defendant Brick Row only. Defendant Brick Row's motion to dismiss only pertains to the Complaint being dismissed for the two claims

against Defendant Brick Row. Plaintiff ICP's disparate impact claims against the other Defendants, disparate treatment claims against the other Defendants, and claim that Defendant Lincoln Property Company violated 42 U.S.C. § 3604(c) of the Fair Housing Act alleged in Plaintiff ICP's Complaint still remain.

## II. Legal Standard for a Rule 12(b)(6) Motion to Dismiss

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Bell Atlantic v. Twombly,* 127 S. Ct. 1955, 1964–65 (2007); FED. R. CIV. P. 12(b)(6). The plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus,* 127 S. Ct. 2197, 2200 (2007) (citing *Twombly,* 127 S. Ct. 1955); FED. R. CIV. P. 8(a). In ruling on a motion to dismiss, the Court must accept the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff. *See Ferrer v. Chevron Corp.,* 484 F.3d 776, 780 (5th Cir. 2007).

A claim is plausible where the plaintiff alleges factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1940 (2009). A plaintiff is not required to provide "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

do." *Twombly,* 127 S. Ct. at 1964–65. The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports the plaintiff's claim. *Id.* at 1965. A complaint may survive a motion to dismiss for failure to state a claim even if it is "improbable" that a plaintiff would be able to prove those facts and even if the possibility of recovery is extremely "remote and unlikely." *Id.*

## III.   Plaintiff ICP's Standing and Defendant Brick Row's Vicarious Liability

Defendant Brick Row does not raise in its motion to dismiss that it disputes Plaintiff ICP's standing to bring this lawsuit against Defendants. Plaintiff ICP alleges that it devotes significant resources to achieve its mission of racially integrating housing and eliminating racial segregation. Fair housing organizations have been deemed by the Supreme Court in *Havens Realty Corp. v. Coleman*, 102 S. Ct. 1114, 1124–25 (1982) to have standing to sue under the Fair Housing Act when it devotes significant resources to identify and counteract a defendant's unlawful practices. 42 U.S.C.

§ 3602(i) (stating the aggrieved person standard); *Havens Realty Corp. v. Coleman*, 102 S. Ct. at 1124–25. Plaintiff ICP further alleges that Defendants' alleged discriminatory practices require Plaintiff ICP to devote more time and resources to help its Section 8 voucher clients find housing units. At the pleading stage, general factual allegations of injury may suffice to establish standing. *Lujan v. Defs. of*

*Wildlife*, 112 S. Ct. 2130, 2137 (1992). At this stage of the proceedings, Plaintiff ICP has established that it has standing to sue Defendant Brick Row in this case.

Defendant Brick Row also does not dispute Plaintiff ICP's assertion that Defendant Brick Row is vicariously liable for the alleged discriminatory actions of Defendant Lincoln Property Company. "It is well established that the [Fair Housing Act] provides for vicarious liability." 24 C.F.R. § 100.7 ("A person is vicariously liable for a discriminatory housing practice by the person's agent or employee . . . ."); *see also Meyer v. Holley*, 123 S. Ct. 824, 829 (2003). A defendant can also be vicariously liable for claims brought under 42 U.S.C. § 1982. *See Dillon v. AFBIC Dev. Corp.*, 597 F.2d 556, 562–63 (5th Cir. 1979). Defendant Brick Row can be vicariously liable for possible Fair Housing Act and 42 U.S.C. § 1982 violations made by Defendant Lincoln Property Company.

## IV.    Plaintiff ICP's Disparate Treatment Claim is Dismissed.

The Court holds that Plaintiff ICP's disparate treatment claim against Defendant Brick Row is dismissed. Plaintiff ICP states that it "pleaded the facts of a claim of disparate treatment for Defendants' refusal to negotiate with or enter into leases with ICP based on the race and color of ICP's voucher clients, Black or African American." Defendant Brick Row asserts that this Court should dismiss Plaintiff ICP's claim for disparate treatment against Defendant Brick Row.

"Disparate treatment is deliberate discrimination." *Munoz v. Orr*, 200 F.3d 291, 299 (5th Cir. 2000). A claim of disparate treatment is "shown by evidence of discriminatory action or by inferences from the 'facts of differences in treatment.'" *L & F Homes & Dev., L.L.C. v. City of Gulfport, Miss.*, 538 F. App'x 395, 401 (5th Cir. 2013) (citing *Int'l Bhd. of Teamsters v. United States*, 97 S. Ct. 1843, 1855 n.15 (1977)). Defendant Brick Row's refusal to negotiate with or rent to voucher households stems from Defendant Lincoln Property Company's policy implemented by Defendant Brick Row refusing to accept Section 8 housing vouchers. Defendant Brick Row's policy does not indicate that Defendant Brick Row only refuses Section 8 housing vouchers from African American or Black voucher holders.

Plaintiff ICP's claim of disparate treatment should be labeled as a disparate impact claim. Although Plaintiff ICP asserts that its claim of disparate treatment is based on how Defendant Brick Row uses discretion to not lease to Plaintiff ICP based on the color and race of ICP's clients, which resembles disparate treatment, Plaintiff's claim should be labeled as a disparate impact claim. *See Inclusive Communities Project, Inc. v. Texas Dep't of Hous. & Cmty. Affairs*, No. 3:08-CV-0546-D, 2016 WL 4494322, at *7 (N.D. Tex. Aug. 26, 2016) ("Where the plaintiff establishes that a subjective policy, such as the use of discretion, has been used to achieve a racial disparity, the plaintiff has shown disparate treatment."). Defendant Brick Row is following its

policy of refusing to accept any Section 8 housing vouchers by not leasing to Plaintiff ICP.

Because Defendant Brick Row uniformly applies its policy to all Section 8 voucher holders, there is no discretionary method of how Defendant Brick Row applies its policy for the Court to analyze for a possible violation of the disparate treatment standard. Defendant Brick Row is not using its discretion in applying its policy to accept some Section 8 voucher holders from certain groups of color or race while rejecting Section 8 voucher holders of a another color or race that it does not prefer. Plaintiff ICP's actual issue is with the existence of Defendant Brick Row's policy so this claim should be labeled as a disparate impact claim. *Id.* ("Where the plaintiff establishes that the existence of the policy itself, rather than how the policy is applied, resulted in racial disparity, the plaintiff has shown disparate impact.").

Plaintiff ICP's disparate treatment claim is mislabeled. The Court dismisses the alleged disparate treatment claim brought against Defendant Brick Row.

**V.     Plaintiff ICP's Disparate Impact Claim is Dismissed.**

Defendant Brick Row asserts that this Court should dismiss Plaintiff ICP's claim for disparate impact against Defendant Brick Row. Defendant Brick Row argues that its practice of refusing to accept Section 8 housing vouchers does not constitute a "policy" that creates an artificial barrier to fair housing resulting in disparate impact. Even if the Court determines that Defendant Brick Row's practice

is a "policy" or a specific enough practice to be analyzed for a violation of the disparate impact standard, Defendant Brick Row further asserts that a prima facie case of disparate impact is not established.  Defendant Brick Row contends Plaintiff ICP failed to provide facts that demonstrate a causal link between Defendant Brick Row's challenged policy and the alleged statistical disparity of availability of Section 8 households in the community of Brick Row Urban Village.  Lastly, if the Court determines that Plaintiff ICP has established a prima facie disparate impact claim, Defendant Brick Row argues that Plaintiff ICP's disparate impact claim fails because Plaintiff ICP did not present viable less discriminatory alternatives.  Even if a prima facie case of disparate impact is shown, Defendant Brick Row asserts Plaintiff has not provided a less discriminatory alternative to address Defendant Brick Row's business concerns.

Plaintiff ICP contends that Defendant Brick Row's policy of refusing to negotiate with or rent to Section 8 housing voucher households disproportionately impacts African American or Black families.  Plaintiff ICP further argues that because Defendant Brick Row's policy has an adverse effect on the amount of availability of Section 8 voucher households in Brick Row Urban Village's community, Defendant Brick Row violated the disparate impact standard of the Fair Housing Act.  Plaintiff ICP contends that it adequately addressed Defendant Brick Row's business concerns

related to renting to Section 8 families by providing the options of the incentive payments, the Sublease Program, and the Third Party Guarantor Program.

Disparate impact claims are cognizable under the Fair Housing Act. *Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.*, 135 S. Ct. 2507, 2521 (2015) ("Recognition of disparate-impact claims is consistent with the FHA's central purpose."). A burden shifting approach has been adopted for disparate impact claims under the Fair Housing Act. *See* 24 C.F.R. § 100.500; *Inclusive Communities Project, Inc.*, 2016 WL 4494322, at *8 (stating that the burden-shifting approach under 24 C.F.R. § 100.500 has been determined by the Supreme Court to be adopted for disparate impact claims under the Fair Housing Act). First, a plaintiff must prove a prima facie case of discrimination by showing that challenged practice causes a discriminatory effect. *See* 24 C.F.R. § 100.500(c)(1). If the plaintiff makes a prima facie case, the defendant must then prove that the challenged practice is necessary to achieve one or more of defendant's substantial, legitimate, nondiscriminatory interests. *See* 24 C.F.R. § 100.500(c)(2). If the defendant meets its burden, the plaintiff must then show that the defendant's interests "could be served by another practice that has a less discriminatory effect." 24 C.F.R. § 100.500(c)(3).

### a. Requirements for a prima facie claim of disparate impact

Disparate impact claims permit the plaintiff "to counteract unconscious prejudices and disguised animus that escape easy classification as disparate treatment." *Id.* at 2522. Liability for disparate impact, however, is limited and should not be imposed based solely on a showing of statistical disparity. *Id.*; *see also Inclusive Communities Project, Inc.*, 2016 WL 4494322, at *4. "Courts must therefore examine with care whether a plaintiff has made out a prima facie case of disparate impact and prompt resolution of these cases is important." *Id.* at 2523. If the plaintiff cannot show a causal connection between the defendant's policy and a disparate impact, a prima facie claim for disparate impact is not shown and plaintiff's disparate impact claim should be dismissed. *Id.* at 2524 (citing *Inclusive Communities Project, Inc. v. Texas Dep't of Hous. & Cmty. Affairs*, 747 F.3d 275, 283 (5th Cir. 2014), *aff'd and remanded*, 135 S. Ct. 2507 (2015) (Jones, J. concurring)).

### b. Defendant Brick Row's practice of not renting to Section 8 housing voucher families is a specific, facially neutral, "policy" or practice.

The first element required for a prima facie disparate impact claim to be asserted, is that Plaintiff ICP must identify a specific, facially neutral, policy or practice of Defendant Brick Row that resulted in disparate impact. *Inclusive Communities Project, Inc.*, 2016 WL 4494322, at *6 (citing *Texas Dep't of Hous. & Cmty. Affairs*, 135 S. Ct. at 2521 (the plaintiff must point to "a defendant's policy or policies causing that disparity"). "Disparate impact claims seek to remove

21

impermissible barriers; therefore, ICP must identify a specific policy that has created barriers to fair housing." *Id.* This is not a trivial burden and the plaintiff needs to point to more than a generalized policy that allegedly leads to disparate impact. *Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 100 (2008) (citing *Smith v. City of Jackson, Miss.*, 544 U.S. 228, 241 (2005)); *see also Inclusive Communities Project, Inc.*, 2016 WL 4494322, at *6 ("If the plaintiff does not identify a specific policy or practice, the court cannot determine whether that policy or practice has created a barrier to fair housing or resulted in a statistical disparity.").

Plaintiff ICP's claim that Defendant Brick Row's practice of refusing to negotiate with or rent to Section 8 housing voucher holders, is sufficient to be a specific "policy" or practice for disparate impact purposes. Plaintiff ICP asserts that Defendant Brick Row's policy of not accepting Section 8 housing vouchers creates a statistical disparity in the availability of voucher householders in Brick Row Urban Village's community. The result of this statistical disparity, Plaintiff ICP alleges, is that African American or Black families have diminished opportunities to live in Brick Row Urban Village's community. Plaintiff ICP's Complaint shows how Defendant Lincoln Property Company on behalf of Defendant Brick Row defines the policy. The policy specifically states: Our community is not authorized to accept housing vouchers; Our community is not authorized to accept Section 8 housing; Our community is not authorized to accept any government subsidized rent programs; No

22

2nd chance leasing, and no vouchers accepted.  The terms of Defendant Brick Row's policy are clear and are sufficient to be defined as a specific, facially neutral, "policy" or practice to be analyzed for a possible violation of the disparate impact standard. *See, e.g., Graoch Assocs. #33, L.P.*, 508 F.3d at 377–78 (stating that for purposes of plaintiff's prima facie case of disparate impact, defendant's practice of no longer accepting Section 8 vouchers constituted a specific practice).

> ### c. Defendant Brick Row's policy caused no statistical disparity, thus Plaintiff ICP did not allege a prima facie claim of disparate impact.

Defendant Brick Row alleges that Plaintiff ICP has not adequately alleged facts that demonstrate its policy regarding Section 8 housing voucher holders caused a statistical disparity.  Defendant Brick Row contends that the statistical analysis of Plaintiff ICP uses to prove disparate impact is flawed.  Defendant Brick Row further asserts that even if there are statistical disparities in the availability of Section 8 voucher households in Brick Row Urban Village's community, no statistical imbalance can be linked to its policy.

> ### i. Plaintiff ICP's theory that a "census tract" defines the parameters of the area to evaluate for a statistical disparity is unsupported.

The parties dispute how the geographical area to determine if Defendant Brick Row's policy actually caused a statistical disparity should be measured. Plaintiff ICP asserts that Defendant Brick Row's policy perpetuates segregation in the

"neighborhood" of Brick Row Urban Village.  Plaintiff ICP contends that a census tract can be used to represent the geography of a "neighborhood" or "community," which in turn can be used as the area to evaluate data and determine if there is a statistical disparity from Defendant Brick Row's policy. Defendant Brick Row asserts Plaintiff ICP's theory is unsupported and that different geographical parameters can be used to define the "community" or "neighborhood" that encompasses Brick Row Urban Village.

To support the argument for a statistical disparity being felt in Defendant Brick Row's community, Plaintiff ICP noted that "there are only 45 voucher households in [Brick Row Urban Village's] entire census tract."  Plaintiff ICP provided in the appendix to its response to Defendant Brick Row's motion to dismiss, a publication from the United States Census Bureau describing how the parameters of a "neighborhood" or "community" can be defined.  In the "Defining my Neighborhood and/or Community" section of the publication, the U.S. Census Bureau states that there are "several options for finding data for your neighborhood and community using census geography."  The publication went on to provide options for finding data for your neighborhood, which includes: (1) incorporated places, (2) census designated places, (3) county subdivisions/minor civil divisions (4) census tracts, (5) census block groups, and (6) census blocks.

A census tract is one of various options that the U.S. Census Bureau suggests for finding data for a "neighborhood" or "community" using census geography. Plaintiff ICP states in its response to Defendant Brick Row's motion to dismiss that "[c]ensus tracts and block groups are often used to represent the geography of a neighborhood" – however, this subtle manipulation of language to conceal truth by saying true things fails to paint a complete picture of how the U.S. Census Bureau suggests how a "neighborhood" or "community" should be defined.

The U.S. Census Bureau states that, "[t]he most common geography for defining communities is *Place*," rather than a census tract. (Doc. No. 23) (emphasis in original). The U.S. Census Bureau states that "[t]here are two types of places the Census Bureau tabulates data for: *incorporated places* and *census designated places*." (emphasis in original). "Incorporated places are legal entities such as cities, towns, villages, or boroughs." Census designated places are identifiable by name and cannot exist within incorporated places. Under the U.S. Census Bureau's definition, China Spring, Texas is an example of a census designated place since it is identifiable by name and does not exist within an incorporated place. County subdivisions/minor civil divisions are then offered as the next alternative to define a "community" or "neighborhood." The U.S. Census Bureau publication, provided by Plaintiff ICP to the Court, then states, "[i]f your community or neighborhood cannot be defined at the place or county subdivision levels, you can define the area using the smallest

levels of geographies offered by the Census Bureau: *census tracts*, *block groups*, and *census blocks*." (emphasis in original). Using a census tract as the geographical area to measure for statistical purposes is one of many options, and is not even offered as the first option to use to define a "neighborhood" or "community."

Plaintiff ICP also did not provide any case law to add to its already tenuous, at best, assertion that a census tract should be the geographical parameter used to see if Defendant Brick Row's policy caused a statistical disparity. There are a variety of ways that the geographical area for statistical purposes can be evaluated by the Court. If the Court uses Plaintiff ICP's suggestion by using the census tract where Brick Row Urban Village is located, then there are just 45 Section 8 Voucher households available in the census tract. If the Court uses the 75081 zip code where Brick Row Urban Village is located as the proper area to use when analyzing the potential effect of Defendant's policy, then there are eight more census tracts that are added to the Court's analysis. In the 75081 zip code there are 301 Section 8 voucher households available according to HUD 2015 census tract data, instead of just 45 voucher households in the one census tract Plaintiff ICP provided. If the Court uses the city of Richardson, Texas where Brick Row Urban Village is located, which has additional zip codes located in it, then there are 376 Section 8 Voucher households available according to HUD 2015 statistics. The parameters that the Court uses in its analysis of whether a statistical disparity exists because of Defendant Brick Row's policy

makes a difference. Plaintiff ICP did not provide adequate support for its assertion that the Court should only analyze the census tract where Brick Row Urban Village is located to determine if there was a statistical disparity felt by Defendant Brick Row's policy of refusing to accept Section 8 vouchers.

### ii. Plaintiff ICP did not show that Defendant Brick Row's policy caused a disparate impact.

Even if the Court uses the census tract where Brick Row Urban Village is located, Plaintiff ICP did not allege facts that show that Defendant Brick Row's policy caused a disparate impact. The Court finds no causal link between Defendant's policy and the alleged disparate impact that was felt. Plaintiff also did not provide support for why its assertion about the majority of the voucher households in Brick Row Urban Village's census tract being in single family or semi-detached structures is significant to the Court's analysis.

The plaintiff has the burden of proving that a challenged practice caused or predictably will cause a discriminatory effect. 24 C.F.R. § 100.500(c)(1); *see also Texas Dep't of Hous. & Cmty. Affairs*, 135 S. Ct. at 2514. "A robust causality requirement ensures that racial imbalance . . . does not without more, establish a prima facie case of disparate impact and thus protects defendants from being held liable for racial disparities they did not create." *Texas Dep't of Hous. & Cmty. Affairs*, 135 S. Ct. at 2523 (quoting *Wards Cove Packing Co. v. Atonio*, 109 S. Ct. 2115

(1989)) (quotation marks omitted).  The causality requirement is required to be "robust" to make sure that "defendants do not resort to the use of racial quotas to avoid liability for statistical disparities."  *Id.*; *see also Inclusive Communities Project, Inc.*, 2016 WL 4494322, at *8 (quotation marks omitted).  If there are not safeguards at the prima facie stage for analyzing possible disparate impact liability, "disparate impact liability might cause race to be used and considered in a pervasive way and would almost inexorably lead governmental or private entities to use numerical quotas and serious constitutional questions then could arise."  *Texas Dep't of Hous. & Cmty. Affairs*, 135 S. Ct. at 2523 (quoting *Wards Cove Packing Co.*, 109 S. Ct. 2115) (quotation marks omitted).

Plaintiff ICP has not proved that Defendant Brick Row's policy caused a "robust" statistical disparity, much less any statistical disparity.  Plaintiff ICP asserts that the lack of available voucher households in Brick Row Urban Village's census tract amounts to an adverse impact on African American or Black families, since African American or Black families predominantly hold Section 8 housing vouchers in the Dallas metropolitan area.  Plaintiff stated that "[t]here are only 45 voucher holders in the entire census tract."  By presenting this information to the Court, Plaintiff shows that there is a possible statistical imbalance with the amount of voucher households in the census tract.  Plaintiff ICP, however, does not provide facts to link Defendant Brick Row's policy to the possible statistical disparity.

Merely showing a statistical imbalance, without providing a bridge to how Defendant Brick Row's policy caused the imbalance is not sufficient.

In the city of Richardson, Texas the amount of available Section 8 Housing Voucher households has increased since April 2010, when Brick Row Urban Village began to be occupied by tenants. According to the HUD statistics, the number of available voucher households has increased from 280 in 2009 to 376 in 2015. The Section 8 voucher population was 68% African American or Black in 2009 and in 2015. Plaintiff also did not provide any information to the Court that noted approximately how many African American or Black voucher holders were denied Section 8 housing in Brick Row Urban Village's census tract, the 75081 zip code, or the city of Richardson, Texas. The statistics provided by Plaintiff ICP failed to establish a causal link between Defendant Brick Row's policy and the alleged disparate impact.

Plaintiff ICP did not allege a prima facie disparate impact claim. The Court dismisses Plaintiff ICP's disparate impact claim.

### d. Plaintiff ICP's disparate impact claim also fails because Plaintiff did not propose viable less discriminatory alternatives.

Even if Plaintiff ICP met its burden to establish a prima facie showing of disparate impact, Plaintiff ICP did not establish a disparate impact claim. For a disparate impact claim under the Fair Housing Act, there is a burden-shifting

framework that must be met.  If the plaintiff meets the burden of establishing a prima facie case, the defendant must then prove that the challenged practice is necessary to achieve one or more substantial, legitimate, nondiscriminatory interests of the defendant.  *See* 24 C.F.R. § 100.500(c)(2); *Inclusive Communities Project, Inc.*, 2016 WL 4494322, at *8 (adopting the burden-shifting framework under 24 C.F.R. § 100.500).  If the defendant meets its burden, the plaintiff must then show that the defendant's interests could be served by another practice that has a less discriminatory alternative. 24 C.F.R. § 100.500(c)(3).

Defendant Brick Row met its burden of proving that the Section 8 housing voucher policy was implemented for "substantial, legitimate, nondiscriminatory interests."  The regulatory requirements that Defendant Brick Row states that it would be subjected to by participating in the Section 8 voucher program are sufficient.  If Defendant Brick Row participated in the Section 8 voucher program, which is voluntary at the state and federal level, Defendant Brick Row could be subjected to increased costs, administrative delays for payment, and various other financial risks.  *See* 24 C.F.R. §§ 982.308(2), 982.401, 982.405; 42 U.S.C. § 1437f; TEX. LOCAL GOV'T CODE § 250.007.  Defendant Brick Row also notes that it chooses not to participate in the Section 8 housing voucher program because of the possibility of increased litigation.  Defendant Brick Row satisfied its burden.

Plaintiff ICP offered incentive payments, its Sublease Program, and its Third Party Guarantor Program as possible less discriminatory alternatives to satisfy Defendant Brick Row's anticipated business concerns. Plaintiff ICP's Sublease Program and Third Party Guarantor Program are not adequate. For the Third Party Guarantor Program, Plaintiff ICP proposed to serve as a third-party guarantor for its Section 8 voucher clients that were permitted to be tenants. For the Sublease Program, Plaintiff ICP would lease three to five units in Brick Row Urban Village. Plaintiff ICP proposed that it would pay the agreed lease amount in a timely manner, respond to all tenant issues, and if the Section 8 voucher program tenant was late or delinquent on the rent payment, Plaintiff ICP would cover the payment. An incentive payment of one month's rent for each Section 8 housing voucher tenant was also offered to Defendant Brick Row if they participated in the Sublease Program or Third Party Guarantor Program.

Although Plaintiff ICP proposed the Sublease Program and Third Party Guarantor Program to alleviate anticipated business concerns of Defendant Brick Row, the programs are not adequate to serve as less discriminatory alternatives that address Defendant Brick Row's business interests. Plaintiff ICP has not shown that its proposed programs have been successfully implemented in the past, or even that Plaintiff ICP can financially support the programs. If Plaintiff ICP's programs are not

successfully executed, then Defendant Brick Row could be exposed to potential financial harm and litigation.

Defendant Brick Row could also be subject to further litigation for deciding to participate in Plaintiff ICP's programs because it could result in favoritism of Section 8 voucher holders that Plaintiff ICP represents. Participation in Plaintiff ICP's programs would create legitimate issues that Defendant Brick Row has pointed out. "Can the ICP seriously contend that Brick Row can continue [to] refus[e] to accept vouchers from White, Hispanic and handicapped tenants, if Brick Row begins accepting vouchers from Black tenants under ICP's programs, without increasing the risk of litigation?" Plaintiff ICP's programs were legitimately refused by Defendant Brick Row and are not less discriminatory alternatives that can adequately serve Defendant Brick Row's business interests. Even if Plaintiff ICP proved a prima facie case of disparate impact, the Court finds that Plaintiff ICP's disparate impact claim fails.

## VI.    Conclusion

The Court **GRANTS** Defendant Brick Row Apartments LLC's Motion to Take Judicial Notice of Certain Data Produced by the U.S. Census Bureau. The Court also **GRANTS** Defendant Brick Row's Rule 12(b)(6) Motion to Dismiss. The Court dismisses Plaintiff ICP's alleged disparate impact and disparate treatment claims as to

Defendant Brick Row.  Plaintiff ICP's Complaint is dismissed as to Defendant Brick Row.

**SO ORDERED.**

Signed July 13th, 2017.

_Ed Kinkeade_
ED KINKEADE
UNITED STATES DISTRICT JUDGE