# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| THE INCLUSIVE COMMUNITIES PROJECT, INC., | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:17-CV-206-K |
| LINCOLN PROPERTY COMPANY, *et. al.*, | § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendants Legacy Multifamily North III LLC and HLI White Rock LLC's Motion to Dismiss Complaint for Failure to State a Claim and Brief in Support (Doc. No. 32), Defendant Lincoln Property Company's Motion to Dismiss Pursuant to Federal Rule 12(b)(6) (Doc. No. 33), Defendant Lincoln Property Company's Motion to Adopt Defendants Brick Row Apartments LLC's Rule 12(b)(6) Motion to Dismiss and Legacy Multifamily North III LLC and HLI White Rock LLC's Rule 12(b)(6) Motion to Dismiss (Doc. No. 34), and CPF PC Riverwalk, LLC's Motion to Dismiss ICP's Complaint for Failure to State a Claim and Supporting Brief (Doc. No. 42).

Plaintiff The Inclusive Communities Project, Inc. ("ICP") brought this lawsuit against Defendant Brick Row Apartments LLC ("Brick Row"), Defendant Lincoln

Property Company, Defendant Legacy Multifamily North III, LLC ("Legacy"), Defendant CPF PC Riverwalk LLC ("CPF PC Riverwalk"), and Defendant HLI White Rock LLC ("HLI White Rock") alleging that Defendants' practice of refusing to rent to or negotiate with Section 8 housing voucher holders violates the Fair Housing Act, 42 U.S.C. § 3601, *et. seq.* The Court previously dismissed Plaintiff ICP's Complaint as to Defendant Brick Row in its Memorandum Opinion and Order on July 13, 2017 (Doc. No. 55). Defendants Legacy, CPF PC Riverwalk, HLI White Rock, and Lincoln Property Company assert that Plaintiff ICP's claims alleged in its Complaint should be dismissed as to each of them as well.

The Court **GRANTS** Defendant Lincoln Property Company's Motion to Adopt Defendants Brick Row Apartments LLC's Rule 12(b)(6) Motion to Dismiss and Legacy Multifamily North III LLC and HLI White Rock LLC's Rule 12(b)(6) Motion to Dismiss (Doc. No. 34). The Court takes into consideration Plaintiff ICP's responses to Defendant Brick Row's motion to dismiss, and Defendants Legacy and HLI White Rock's motion to dismiss and incorporates Plaintiff ICP's arguments into Plaintiff ICP's response to Defendant Lincoln Property Company's motion to dismiss.

After careful consideration of Defendants' motions to dismiss Plaintiff ICP's Complaint, Plaintiff ICP's responses to Defendants' motions to dismiss, Defendants' replies to Plaintiff ICP's responses to Defendants' motions to dismiss, and the

applicable law, the Court **GRANTS** each of the Defendants' motions to dismiss Plaintiff ICP's Complaint (Doc. Nos. 32, 33, and 42). Plaintiff ICP's Complaint against all Defendants is dismissed.

I.      **Factual Background**

Defendants' refusal to rent to or negotiate with households that participate in the federal Housing Choice Voucher Program, commonly known as the "Section 8" housing voucher program is the driving force behind this lawsuit. Plaintiff ICP alleges that Defendants instituted a policy or practice of refusing Section 8 housing vouchers in "high opportunity" areas within the Dallas metropolitan area. Plaintiff ICP contends that the "high opportunity" areas where Defendants refuse to rent to or negotiate with Section 8 voucher holders are predominantly White, non-minority areas. The "high opportunity" areas are described by Plaintiff ICP as being safe and secure communities with higher median incomes, good schools, and lower poverty rates. Plaintiff ICP further alleges that Defendants do not have this policy in majority minority areas and that Defendants rent to or negotiate with Section 8 voucher households in majority minority areas.

Plaintiff ICP asserts four claims. Two of the claims asserted by Plaintiff ICP are asserted against all Defendants – Defendants Legacy, HLI White Rock, CPF PC Riverwalk, and Lincoln Property Company. Plaintiff ICP contends that all Defendants violated the disparate impact standard under the Fair Housing Act

because their policy of not renting to or negotiating with Section 8 voucher holders causes a racially discriminatory effect. All Defendants are also alleged by Plaintiff ICP to have violated the disparate treatment standard under the Fair Housing Act, 42 U.S.C. § 3604(a), and 42 U.S.C. § 1982, because of refusing to negotiate with or enter into leases with Plaintiff ICP based on the race and color of Plaintiff ICP's Section 8 voucher clients.

Plaintiff ICP additionally brings two claims solely against Defendant Lincoln Property Company. Plaintiff ICP asserts that Defendant Lincoln Property Company's advertisements violate 42 U.S.C. § 3604(c) of the Fair Housing Act because Defendant Lincoln Property Company's advertisements show racial preference or discriminate based on race or color.

Plaintiff ICP alleges an additional disparate treatment claim against Defendant Lincoln Property Company. Plaintiff ICP contends that Defendant Lincoln Property Company's policy of refusing to negotiate with or rent to Section 8 voucher households violates the disparate treatment standard under 42 U.S.C. § 3604(a) and 42 U.S.C. § 1982 because Defendant Lincoln Property Company's refusal is based on the race or color of the voucher households.

### a. Plaintiff ICP and the Section 8 Housing Voucher Program

Plaintiff ICP is a nonprofit organization that seeks to create and maintain racially and economically inclusive communities. Plaintiff ICP pursues expansion of

fair and affordable housing for low income families and attempts to remedy harmful practices that perpetuate discrimination and segregation in the community. As part of Plaintiff ICP's fair housing focused initiative, Plaintiff ICP provides counseling, financial assistance, and other services for low income families.

One of the main tools that Plaintiff ICP helps its client use to achieve housing equality is the federal Section 8 housing voucher program. Plaintiff ICP's Section 8 housing voucher clients are predominantly African American or Black families. The Section 8 housing voucher program is a subsidy provided to landlords who are willing to rent dwelling units to low income households. The subsidy from the program given to the landlords pays the difference between the rental amount and the amount that the voucher household is required to pay under the Section 8 housing voucher program, which ranges from 30% to 40% of the household's income. Participation in the Section 8 housing voucher program is voluntary rather than mandatory. *See* 42 U.S.C. § 1437f(o)(6)(B); TEX. LOCAL GOV'T CODE § 250.007; *Austin Apartment Ass'n v. City of Austin*, 89 F. Supp. 3d 886, 890 (W.D. Tex. 2015) ("Federal law does not require landlords to accept housing vouchers, and landlords who do accept vouchers are not required to approve tenants merely because they are voucher holders."); *Salute v. Stratford Greens Garden Apartments*, 136 F.3d 293, 300 (2d Cir. 1998) ("We think that the voluntariness provision of Section 8 reflects a congressional intent that the

burdens of Section 8 participation are substantial enough that participation should not be forced on landlords . . . .").

African American or Black families are the largest demographic group in the Dallas area that participate in the Section 8 housing voucher program. The Dallas Housing Authority administers the largest number of Section 8 housing vouchers of any agency in the Dallas, Texas metropolitan area. Out of the 17,000 plus vouchers Dallas Housing Authority issues, 86% of the voucher holders are alleged to be African American or Black families, and 6% are non-minority families. According to the U.S. Housing & Urban Development Department ("HUD") 2015 statistics, of the 30,745 Section 8 housing voucher population served by all of the housing authorities in the Dallas-Plano-Irving TX Metropolitan Division, African American or Black families are alleged to make up 81% of the voucher population, Hispanic families are alleged to make up 6% of the voucher population, and White non-Hispanic families are alleged to make up 10% of the voucher population.

Plaintiff ICP provides mobility assistance to all Section 8 voucher households that want to move to higher opportunity communities in the Dallas area. Mobility assistance involves Plaintiff ICP negotiating with landlords on behalf of its Section 8 voucher clients, if necessary. Plaintiff ICP offers incentive payments, to serve as a sublessor, or to serve as a third party guarantor to encourage landlords to participate in the Section 8 housing voucher program. The different programs and incentive

payments offered by Plaintiff ICP are designed in a way to address possible business concerns a landlord may have when renting to a Section 8 voucher household.

On five occasions from August 2015 to May 2016, Plaintiff ICP sent letters to Defendant Lincoln Property Company attempting to encourage Defendant Lincoln Property Company to accept Section 8 housing vouchers for properties it manages – Parkside at Legacy (owned by Defendant Legacy), Park Central at Flower Mound (owned by Defendant CPF PC Riverwalk), White Rock Lake Apartment Villas (owned by Defendant HLI White Rock), McKinney Uptown, and Brick Row Urban Village (owned by Defendant Brick Row). In the letters to Defendant Lincoln Property Company, Plaintiff ICP proposed participation in Plaintiff ICP's Third Party Guarantor Program or Sublease Program to address possible business concerns Defendants could have.

For the Third Party Guarantor Program that Plaintiff ICP offered, Plaintiff ICP proposed to serve as the third-party guarantor for its Section 8 voucher clients using the standard Texas Apartment Association Lease Contract Guaranty Form. Plaintiff ICP represented that it would be willing to add provisions to the Lease Contract Guaranty form to cover any losses due to possible housing authority delays in processing the Section 8 housing voucher of the voucher household. An incentive payment of one month's rent for each Section 8 housing voucher tenant selected to

occupy Defendants' apartment complexes was also offered if they participated in the Third Party Guarantor Program.

Plaintiff ICP alternatively offered a Sublease Program to try to entice Defendants to rent to its Section 8 voucher clients. Plaintiff ICP stated that, "ICP has its own experience as a landlord dealing with Dallas Housing Authority and other voucher agencies in the area and understands some of the concerns. However, we believe, based on that experience, that such concerns can be effectively addressed in a way that works for everyone involved."

Plaintiff ICP began the proposal by stating that the President of the Apartment Association of Greater Dallas endorses the merit of the Sublease Program and has offered to work with Plaintiff ICP. The responsibility of finding and proposing qualified Section 8 voucher tenants to Defendants would fall solely on Plaintiff ICP. For the Sublease Program, Plaintiff ICP would lease three to five units in the Defendants' apartment complexes that participated in the program. As a sublessor, similar to the role of a corporate entity, Plaintiff ICP would pay the agreed lease amount in a timely manner, respond to all tenant issues, and, if necessary, evict Section 8 housing voucher tenants. If the Section 8 housing voucher tenant, or the housing authority responsible for the subsidy to the landlord was late or delinquent on the rent payment, Plaintiff ICP offered to cover the unpaid portion of the payment under the lease contract. Plaintiff ICP also offered a financial incentive of

one month's contract rent for each unit that Defendants would agree to lease to Section 8 housing voucher tenants.

Neither Defendants Legacy, HLI White Rock, and CPF PC Riverwalk, nor Defendants' agent, Defendant Lincoln Property Company, responded to Plaintiff ICP's letters proposing the Third Party Guarantor Program and Sublease Program.

**b. Defendant Lincoln Property Company**

Defendant Lincoln Property Company manages residential rental properties of Defendants Legacy, HLI White Rock, and CPF PC Riverwalk. As the manager or owner of apartment complexes, Defendant Lincoln Property Company is alleged to have implemented a policy of refusing to rent to Section 8 voucher holders for 54 of its apartment complexes. Plaintiff ICP contends that this policy or practice is implemented in majority White non-Hispanic census tracts that have lower poverty rates, higher median family incomes, and higher ranking public schools.

Apartment locator services offering Defendant Lincoln Property Company's rental units to prospective tenants advertise Defendant Lincoln Property Company's policy in various ways:

- Our community is not authorized to accept housing vouchers.

- Our community is not authorized to accept Section 8 housing.

- Our community is not authorized to accept any government subsidized rent programs.

- No 2nd chance leasing, and no vouchers accepted.

Plaintiff ICP alleges that Defendant Lincoln Property Company publishes these advertisements for apartment complexes in the Dallas metropolitan area that are located in census tracts that are less than thirty percent Black or African American.

### c.  Defendants Legacy, HLI White Rock, and CPF PC Riverwalk

Defendants Legacy, HLI White Rock, and CPF PC Riverwalk are alleged to have implemented Defendant Lincoln Property Company's policy of refusing to rent to or negotiate with Section 8 housing voucher holders at their apartment complexes. Plaintiff ICP alleges that there were no Section 8 housing voucher households or housing voucher households available in census tracts where Defendant Legacy's Parkside at Legacy complex, HLI White Rock's White Rock Lake Apartment Villas complex, and CPF PC Riverwalk's Park Central at Flower Mound complex are located as of the HUD 2015 Picture of Subsidized Housing Report.

Defendant Legacy owns the Parkside at Legacy apartment complex in Plano, Texas 75024.  The Parkside at Legacy apartment complex is alleged to have 293 rental units.  Plaintiff ICP alleges that in the census tract block group where the Parkside at Legacy complex is located, Black or African American renters are alleged to occupy 14 percent of the 630 renter occupied units based on the American Community Survey 2014 5-year estimates.

Defendant HLI White Rock owns the White Rock Lake Apartment Villas apartment complex located in Dallas, Texas 75218. There are 296 rental units in the White Rock Lake Apartment Villas complex. Plaintiff ICP alleges that according to the American Community Survey 2014 5-year estimates, 11 percent of the 1,022 renter units in the census tract block group where the White Rock Lake Apartment Villas apartment is located are Black or African American renters.

Defendant CPF PC Riverwalk owns the Park Central at Flower Mound apartment complex in Flower Mound, Texas 75028. There are 307 rental units at the Park Central at Flower Mound apartment complex. Plaintiff ICP alleges that there are no Black or African American renters in the census tract block group where the Park Central at Flower Mound complex is located based on the American Community Survey 2014 5-year estimates.

Because of Defendants Legacy, HLI White Rock, CPF PC Riverwalk, and Lincoln Property Company's refusal to rent to or negotiate with Section 8 voucher households, Plaintiff ICP brought four claims in its Complaint against Defendants: (1) All Defendants violated the disparate impact standard of the Fair Housing Act; (2) All Defendants violated the disparate treatment standard of the Fair Housing Act; (3) Defendant Lincoln Property Company violated 42 U.S.C. § 3604(c) of the Fair Housing Act because its advertisements showed racial preference for tenants; and (4)

Defendant Lincoln Property Company violated the disparate treatment standard of the Fair Housing Act.

## II.     Legal Standard for a Rule 12(b)(6) Motion to Dismiss

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Bell Atlantic v. Twombly,* 127 S. Ct. 1955, 1964–65 (2007); FED. R. CIV. P. 12(b)(6). The plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *Erickson v. Pardus,* 127 S. Ct. 2197, 2200 (2007) (citing *Twombly,* 127 S. Ct. 1955); FED. R. CIV. P. 8(a). In ruling on a motion to dismiss, the court must accept the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff. *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007).

A claim is plausible where the plaintiff alleges factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1940 (2009). A plaintiff is not required to provide "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 127 S. Ct. at 1964–65. The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports the plaintiff's claim. *Id.* at 1965. "[C]onclusory

allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *S. Christian Leadership Conference v. Supreme Court of State of La.*, 252 F.3d 781, 786 (5th Cir. 2001) (quoting *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)) (quotation marks omitted).

### III. Plaintiff ICP has standing and Defendants Legacy, HLI White Rock, and CPF PC Riverwalk are subject to vicarious liability.

Defendants do not dispute whether Plaintiff ICP has standing to bring the claims that Plaintiff ICP brings against them. Fair housing organizations have been determined by the Supreme Court in *Havens Realty Corp. v. Coleman*, 102 S. Ct. 1114, 1124–25 (1982) to have standing to sue under the Fair Housing Act when the organization devotes significant resources to identify and counteract a defendant's unlawful practices. 42 U.S.C. § 3602(i) (stating the aggrieved person standard); *Havens Realty*, 102 S. Ct. at 1124–25. Plaintiff ICP alleges that it devotes significant resources to eliminate segregation and integrate housing throughout the Dallas metropolitan area. Plaintiff ICP further alleges that Defendants' alleged discriminatory practices require Plaintiff ICP to devote more time and resources to help its Section 8 voucher clients find housing units. Plaintiff ICP has standing to bring this lawsuit against Defendants.

Defendants Legacy, HLI White Rock, and CPF PC Riverwalk also do not dispute Plaintiff ICP's assertion that Defendants are vicariously liable for the actions

13

of Defendant Lincoln Property Company. Defendant Lincoln Property Company is the property manager for the apartment complexes owned by Defendants Legacy, HLI White Rock, and CPF PC Riverwalk. "It is well established that the [Fair Housing Act] provides for vicarious liability." 24 C.F.R. § 100.7 ("A person is vicariously liable for a discriminatory housing practice by the person's agent or employee . . . ."); *see also Meyer v. Holley*, 123 S. Ct. 824, 829 (2003). A defendant can also be vicariously liable for claims brought under 42 U.S.C. § 1982. *Dillon v. AFBIC Dev. Corp.*, 597 F.2d 556, 562–63 (5th Cir. 1979). Defendant Lincoln Property Company's implementation of the alleged policy of refusing to rent to or negotiate with Section 8 housing voucher holders as the agent of Defendants Legacy, HLI White Rock, and CPF PC Riverwalk is enough to subject Defendants to vicarious liability.

## IV. Plaintiff ICP's disparate treatment claims against Defendants are dismissed.

The Court holds that Plaintiff ICP's disparate treatment claims against Defendants are dismissed. Plaintiff ICP first asserts that all Defendants violated the disparate treatment standard under 42 U.S.C. § 3604(a) and 42 U.S.C. § 1982 because of Defendants' refusal to negotiate with or enter into leases with Plaintiff ICP. Plaintiff ICP also brought a disparate treatment claim against Defendant Lincoln Property Company because of Defendant Lincoln Property Company's policy

of refusing to negotiate with or rent to Section 8 voucher households. The Court dismisses both of Plaintiff ICP's disparate treatment claims.

A disparate treatment claim is shown when one group is treated less favorably than another because of their race, color, or other protected characteristic. *Raytheon Co. v. Hernandez*, 124 S. Ct. 513, 519 (2003). Disparate treatment is deliberate discrimination. *Munoz v. Orr*, 200 F.3d 291, 299 (5th Cir. 2000). A claim of disparate treatment is "shown by evidence of discriminatory action or by inferences from the fact of differences in treatment." *L & F Homes & Dev., L.L.C. v. City of Gulfport, Miss.*, 538 F. App'x 395, 401 (5th Cir. 2013) (quoting *Int'l Bhd. of Teamsters v. United States*, 97 S. Ct. 1843, 1855 n.15 (1977)). When a subjective policy, such as the use of discretion, has been used to achieve a racial disparity, the plaintiff has shown disparate treatment. *Inclusive Communities Project, Inc. v. Texas Dep't of Hous. & Cmty. Affairs*, No. 3:08-CV-0546-D, 2016 WL 4494322, at *7 (N.D. Tex. Aug. 26, 2016). A disparate impact claim, in contrast, is shown when the plaintiff seeks to establish that the existence of the policy itself, rather than how the policy is applied, is the cause of the alleged racial disparity. *Id*.

Plaintiff ICP's disparate treatment claims against Defendants are mislabeled and are essentially disparate impact claims. The reason that Defendants refuse to enter into leases with Plaintiff ICP is because Plaintiff ICP is seeking to enter into leases with Defendants on behalf of its Section 8 voucher household clients.

Defendant Lincoln Property Company refuses to rent to or negotiate with Section 8 voucher holders, regardless of race or color. There are no allegations made against Defendants' subjective application of their policy to Section 8 voucher holders. Plaintiff ICP's issue is with the existence of Defendants' policy, which is indicative of disparate impact rather than disparate treatment.

Plaintiff ICP's disparate treatment claim against Defendant Lincoln Property Company because of Defendant Lincoln Property Company's refusal to negotiate with or rent to voucher households also fails. There is nothing alleged as to how Defendant Lincoln Property Company applies its policy of refusing Section 8 housing vouchers as a means of intentional discrimination based on race or color. There is no discretionary method of how Defendant Lincoln Property Company applies its policy for the Court to analyze for a possible violation of the disparate treatment standard. No facts are alleged to show that Defendant Lincoln Property Company implements its policy in a way where it considers the race or color of the Section 8 voucher holder. The root of Plaintiff ICP's alleged discrimination is in Defendants' policy itself rather than how the policy is subjectively being implemented, which amounts to a claim of disparate impact. *Id.* ("[W]here the plaintiff establishes that the existence of the policy itself, rather than how the policy is applied, resulted in racial disparity, the plaintiff has shown disparate impact.").

Plaintiff ICP's disparate treatment claims are mislabeled. The Court dismisses the alleged disparate treatment claims brought against Defendants Legacy, CPF PC Riverwalk, HLI White Rock, and Lincoln Property Company.

## V. Plaintiff ICP's disparate impact claims are dismissed.

Plaintiff ICP additionally asserts that Defendants Lincoln Property Company, Legacy, HLI White Rock, and CPF PC Riverwalk violate the disparate impact standard under the Fair Housing Act. Plaintiff ICP contends that Defendants' facially neutral policy or practice has an adverse effect on Black or African American families and perpetuates segregation in communities, which indicates disparate impact.

Disparate impact claims are cognizable under the Fair Housing Act. *Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.*, 135 S. Ct. 2507, 2521 (2015). A burden shifting approach has been adopted for disparate impact claims under the Fair Housing Act. *See* 24 C.F.R. § 100.500; *Inclusive Communities Project, Inc.*, 2016 WL 4494322, at *4. First, a plaintiff must prove a prima facie case of discrimination by showing that the challenged practice causes a discriminatory effect. 24 C.F.R. § 100.500(c)(1). If the plaintiff makes a prima facie case, the defendant must then prove that the challenged practice is necessary to achieve one or more of defendant's substantial, legitimate, nondiscriminatory interests. 24 C.F.R. § 100.500(c)(2). If the defendant meets its burden, the plaintiff must then show that

the defendant's interests "could be served by another practice that has a less discriminatory effect." 24 C.F.R. § 100.500(c)(3).

### a. Requirements for a prima facie claim of disparate impact

"Courts must . . . examine with care whether a plaintiff has made out a prima facie case of disparate impact and prompt resolution of these cases is important." *Texas Dep't of Hous. & Cmty. Affairs*, 135 S. Ct. at 2523. Disparate impact claims permit the plaintiff "to counteract unconscious prejudices and disguised animus that escape easy classification as disparate treatment." *Id.* at 2522. Liability for disparate impact, however, is limited and should not be imposed based solely on a showing of statistical disparity. *Id.* at 2524; *see also Inclusive Communities Project, Inc.*, 2016 WL 4494322, at *4–5. If the plaintiff cannot show a causal connection between the defendants' policy and a disparate impact, a prima facie claim for disparate impact is not shown and plaintiff's disparate impact claim should be dismissed. *Texas Dep't of Hous. & Cmty. Affairs*, 135 S. Ct. at 2524 (citing *Inclusive Communities Project, Inc. v. Texas Dep't of Hous. & Cmty. Affairs*, 747 F.3d 275, 283 (5th Cir. 2014) (Jones, J. concurring), *aff'd and remanded*, 135 S. Ct. 2507 (2015)).

### b. Plaintiff ICP did not plead a prima facie disparate impact claim.

Defendants assert that Plaintiff ICP does not show a prima facie case for disparate impact liability because Plaintiff ICP fails to show how Defendants' policy caused the statistical disparities that Plaintiff ICP alleges in its Complaint. This Court

agrees.  There is no causal link between Defendants' policy and the alleged disparate impact.

Defendants' policy of refusing to rent to or negotiate with Section 8 voucher holders is considered to be a "policy" or "practice" that can be scrutinized when evaluating if there is disparate impact liability.  *See, e.g.*, *Graoch Assocs. # 33, L.P. v. Louisville/Jefferson Cty. Metro Human Relations Comm'n*, 508 F.3d 366, 377–78 (6th Cir. 2007) (stating that for purposes of analyzing plaintiff's prima facie case of disparate impact, defendant's practice of no longer accepting Section 8 vouchers constituted a specific practice).

The plaintiff has the burden of proving that a challenged practice caused or predictably will cause a discriminatory effect.  24 C.F.R. § 100.500(c)(1); *see also Texas Dep't of Hous. & Cmty. Affairs*, 135 S. Ct. at 2514. "A robust causality requirement ensures that racial imbalance . . . does not without more, establish a prima facie case of disparate impact and thus protects defendants from being held liable for racial disparities they did not create." *Texas Dep't of Hous. & Cmty. Affairs*, 135 S. Ct. at 2523 (quoting *Wards Cove Packing Co. v. Atonio*, 109 S. Ct. 2115, 2122–23 (1989)) (quotation marks omitted).  The causality requirement is required to be "robust" to make sure that "defendants do not resort to the use of racial quotas to avoid liability for statistical disparities." *Inclusive Communities Project, Inc.*, 2016 WL

4494322, at *8 (quoting *Texas Dep't of Hous. & Cmty. Affairs*, 135 S. Ct. at 2523) (quotation marks omitted).

Plaintiff ICP has not proved that Defendants' policy caused a "robust," or any statistical disparity. Plaintiff ICP presents to the Court a sequence of events in an attempt to show how Defendants' policy caused a statistical disparity for a prima facie disparate impact claim. Plaintiff ICP states that the following events show how Defendants' policy caused a disparate impact:

- Defendant Lincoln Property Company has a general policy that it will not negotiate with or rent to households with vouchers. Lincoln Property Company applies this policy in White non-Hispanic areas. Lincoln Property Company applies this policy even when the combined income of the family and the voucher subsidy meet or exceed the contract rent for the unit.

- Defendant Lincoln Property Company has a general policy that it will not negotiate with, rent to, or make units available to voucher holders . . . Defendant Lincoln Property Company applies this policy to the multifamily units it manages for the other Defendants.

- Defendant Lincoln Property Company advertises its policy of refusing to negotiate with or rent to voucher households. Defendant Lincoln Property Company places the advertisements with internet apartment locators seeking applicants for vacant Lincoln Property Company units.

- Defendant Lincoln Property Company and the other multifamily property management companies with rental units available at voucher program rents consistently refuse to rent to voucher families.

- Defendant Lincoln Property Company's policy to not negotiate with or rent to voucher households is implemented at its multifamily rental projects located in majority White non-Hispanic census tracts in the Dallas metropolitan area focusing on Collin, Dallas, Denton, and Rockwall counties.

20

- Defendant Lincoln Property Company's policy makes Defendant Lincoln Property Company's managed multifamily units unavailable to a population that is disproportionately Black or African American based on the percent of the Black or African American renter households that are income eligible for vouchers compared to the percent of the White population that is income eligible for vouchers.

- Plaintiff ICP's voucher clients are predominantly Black. Plaintiff ICP has Black voucher clients who are eligible under Defendant Lincoln Property Company's Application Criteria and with whom Plaintiff ICP would have entered into subleases for available units. Defendants had units available in non-minority concentrated, high opportunity areas for which the contract rent was within the amount that could have been paid under the voucher program. Defendants refused to either negotiate or enter into leases pursuant to Plaintiff ICP's offer. Units continue to be available at the contract rents that could be paid under the voucher program.

- The Dallas area voucher households are predominantly African American or Black. There are African American or Black voucher clients who are eligible under Defendant Lincoln Property Company's Application Criteria and who would have entered into leases for available units. Defendants had units available in non-minority concentrated, high opportunity areas for which the contract rent was within the amount that could have been paid under the voucher program. Defendants refuse to either negotiate or enter into leases with voucher households unless required to do so by law or other government requirement. Units continue to be available at the contract rents that could be paid under the voucher program.

(Doc. No. 39 at 7–9).

The existence of statistical disparities in the census tracts where Defendants' apartment complexes are located are also presented by Plaintiff ICP. Black or African American renters are alleged to occupy 14 percent of the 630 rental units in the small census tract block group where Defendant Legacy's Parkside at Legacy apartment

21

complex is located. Black or African American renters are also alleged to occupy 11 percent of 1,022 rental units in the small census tract block group where the White Rock Lake Apartment Villas complex is located. No Black or African American renters are alleged to be in the small census tract block group where the Park Central at Flower Mound apartment complex is located. It is also alleged that no Section 8 voucher households are in the small census tracts where the Park Central at Flower Mound, White Rock Apartment Villas, and Parkside at Legacy apartment complexes are located.

The statistical information and arguments presented by Plaintiff ICP is conclusory rather than descriptive of how Defendants' policy actually caused a disparate impact. "A plaintiff who fails to allege facts at the pleading stage or produce statistical evidence demonstrating a causal connection cannot make out a prima facie cause of disparate impact." *Texas Dep't of Hous. & Cmty. Affairs*, 135 S. Ct. at 2523.

The Court finds no causal connection. Plaintiff ICP contends that Defendants' policy perpetuates segregation and made rental units disproportionately unavailable to African American or Black voucher holders. Plaintiff ICP provides no information to show how Defendants' policy has caused the racial disparity, or resulted in an increased amount of African American or Black prospective renters being rejected in each of the Defendants' census tracts.

Plaintiff ICP also fails to show how Defendants' policy adversely effected Black or African American prospective renters.  None of the allegations show or infer that Defendants' policy diminished the amount of rental opportunities for African American or Black prospective tenants previously available before Defendants' policy was implemented.  There is no way for the Court to link Defendants' policy with the alleged statistical disparities in Plaintiff ICP's allegations.  "[R]acial imbalance . . . does not, without more, establish a prima facie case of disparate impact." *Texas Dep't of Hous. & Cmty. Affairs*, 135 S. Ct. at 2523 (quoting *Wards Cove Packing Co. v. Atonio*, 109 S. Ct. at 2122–23).  Plaintiff ICP's disparate impact claims against Defendants are dismissed.

### c. Plaintiff ICP's disparate impact claims also fail because Plaintiff's less discriminatory alternatives are inadequate.

Even if Plaintiff ICP met its burden to establish a prima facie showing of disparate impact, Plaintiff ICP does not establish a disparate impact claim.  For a disparate impact claim under the Fair Housing Act, there is a burden-shifting framework that must be met.  If the plaintiff meets the burden of establishing a prima facie case, the defendant must then prove that the challenged practice is necessary to achieve one or more substantial, legitimate, nondiscriminatory interests of the defendant.  *See* 24 C.F.R. § 100.500(c)(2); *Inclusive Communities Project, Inc.*, 2016 WL 4494322, at *4 (adopting the burden-shifting framework under 24 C.F.R. § 100.500).  If the defendant meets its burden, the plaintiff must then show that the

defendant's interests could be served by another practice that has a less discriminatory alternative. 24 C.F.R. § 100.500(c)(3).

Defendants Section 8 housing voucher policy was implemented for "substantial, legitimate, nondiscriminatory interests." Business concerns such as increased costs, administrative delays in receiving payment, and other financial risks are all reasons why landlords choose not to participate in the Section 8 housing voucher program. *See* 24 C.F.R. §§ 982.401, 982.405; 42 U.S.C. § 1437f; TEX. LOCAL GOV'T CODE § 250.007. Defendants have similar concerns.

The proposals of the Third Party Guarantor Program and Sublease Program acknowledge Defendants' legitimate business concerns of increased costs, administrative delays for payment, and other financial risks. For the Third Party Guarantor Program, Plaintiff ICP offered to provide incentive payments and to serve as a third party guarantor to eliminate any economic business concerns Defendants could have. For the Sublease Program, Plaintiff ICP shows that Plaintiff ICP seeks to address Defendants' economic or administrative concerns by offering to serve as a corporate entity subleasing to Section 8 voucher holders. Describing the Sublease Program Plaintiff ICP states, "ICP has its own experience as a landlord dealing with Dallas Housing Authority and other voucher agencies in the area and understands some of the concerns." Because of business concerns that are acknowledged by

Plaintiff, Defendants' Section 8 policy was implemented for legitimate, nondiscriminatory business interests.

"Before rejecting a business justification . . . a court must determine that a plaintiff has shown that there is an available alternative . . . practice that has less disparate impact and serves the [defendants'] legitimate needs." *Texas Dep't of Hous. & Cmty. Affairs*, 135 S. Ct. at 2518 (quoting *Ricci v. DeStafano*, 129 S. Ct. 2658, 2673 (2009)) (quotation marks omitted).

Although Plaintiff ICP proposed the incentive payments, Sublease Program, and Third Party Guarantor Program to alleviate Defendants' anticipated business concerns, the programs are not adequate to serve as less discriminatory alternatives. Plaintiff ICP's proposals, while laudable, do not show how or if the proposed programs have performed, or if Plaintiff ICP can financially support the programs. If Plaintiff ICP's programs are not successfully executed, then Defendants could experience financial harm.

Defendants could also be subject to litigation for deciding to participate in Plaintiff ICP's programs because it could result in favoritism of Section 8 voucher holders that Plaintiff ICP represents. Participation in Plaintiff ICP's programs could create legitimate issues. Defendant Brick Row posed a fair question which is also applicable to the other Defendants, "Can the ICP seriously contend that [Defendants] can continue [to] refus[e] to accept vouchers from White, Hispanic and

handicapped tenants, if [Defendants] begin[] accepting vouchers from Black tenants under ICP's programs, without increasing the risk of litigation?" Plaintiff ICP's programs were legitimately refused by Defendants and are not less discriminatory alternatives that can adequately serve Defendants' business interests. Even if Plaintiff ICP proved a prima facie case of disparate impact, Plaintiff ICP's disparate impact claims against Defendants Legacy, CPF PC Riverwalk, HLI White Rock, and Lincoln Property Company are dismissed.

## VI. Plaintiff ICP fails to plead facts that show that Defendant Lincoln Property Company's advertisements violate 42 U.S.C. § 3604(c).

Plaintiff ICP alleges that Defendant Lincoln Property Company's advertisements are racially discriminatory and violate 42 U.S.C. § 3604(c) of the Fair Housing Act. Defendant Lincoln Property Company's advertisements state

- Our community is not authorized to accept housing vouchers.

- Our community is not authorized to accept Section 8 housing.

- Our community is not authorized to accept any government subsidized rent programs.

- No 2nd chance leasing, and no vouchers accepted.

Section 3604(c) of the Fair Housing Act prohibits advertisements for rental dwellings that show preference or discriminate based on race or color. 42 U.S.C. § 3604(c) states that

> it shall be unlawful . . . [t]o make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination.

42 U.S.C. § 3604(c).

This Court must analyze whether Defendants violated § 3604(c) using precedents from other circuits since it has not been established how this Court should analyze this issue by the Fifth Circuit. The standard that is applied to determine if the advertisement violates § 3604(c) is if the advertisement suggests to an "ordinary reader" that a particular race is preferred or not preferred for the housing in question. *See, e.g.*, *Ragin v. New York Times Co.*, 923 F.2d 995, 999 (2d Cir. 1991) (adopting this standard when analyzing a possible § 3604(c) violation); *Spann v. Colonial Vill., Inc.*, 899 F.2d 24, 29 (D.C. Cir. 1990) (same standard); *United States v. Hunter*, 459 F.2d 205, 215 (4th Cir. 1972), *cert. denied*, 93 S. Ct. 235 (1972) (same standard). An "ordinary reader" is neither the most suspicious nor the most insensitive person in our society. *Miami Valley Fair Hous. Ctr., Inc. v. Connor Grp.*, 725 F.3d 571, 577 (6th Cir. 2013) (quotation marks omitted); *Jancik v. Dep't of Hous. & Urban Dev.*, 44 F.3d 553, 556 n.4 (7th Cir. 1995); *Ragin*, 923 F.2d at 1002. "[Section 3604(c)] prohibits all ads that indicate a racial preference to an ordinary reader whatever the advertiser's intent." *Ragin*, 923 F.2d at 1000. *See also Jancik*, 44 F.3d at 556.

A split among the circuits exists as to what constitutes showing racial "preference" under the "ordinary reader" standard for § 3604(c). The Second and the Seventh Circuits have interpreted showing "preference" to mean that the policy could possibly "discourage" an ordinary reader from considering to rent or buy a dwelling. *See Jancik*, 44 F.3d at 556; *Ragin*, 923 F.2d at 999–1000 ("[W]e read the word 'preference' to describe any ad that would discourage an ordinary reader of a particular race from answering it."). The Sixth and Fourth Circuits, however, choose not to incorporate the "discourage" language into its analysis of whether something violates § 3604(c). The Fourth Circuit and the Sixth Circuit analyze whether "preference" is shown by simply analyzing whether the policy indicates any type of racial preference. *See Miami Valley Fair Hous. Ctr.*, 725 F.3d at 578 ("We decline to incorporate the discourage language into our ordinary-reader analysis"); *Hous. Opportunities Made Equal, Inc. v. Cincinnati Enquirer, a Div. of Gannett Co.*, 943 F.2d 644, 646 (6th Cir. 1991); *Hunter*, 459 F.2d at 215. This difference of opinion between the circuits, however, does not impact this Court's analysis. If the Court used either description of "preference," Defendant Lincoln Property Company's Section 8 policy does not show racial preference.

This Court will analyze whether Plaintiff's § 3604(c) claim should be dismissed at the motion to dismiss stage by using a case that involved a similar allegation of a subtle presence of racial preference in defendant's advertisements.

At the motion to dismiss stage, a racial preference can be shown that would deny dismissal of a plaintiff's complaint if race is used, even subtly, to show racial preference in a defendant's advertisements. *Ragin*, 923 F.2d at 999. In *Ragin v. New York Times Co.*, the Second Circuit affirmed the district court's denial of the defendant, *The New York Times*' motion to dismiss plaintiffs' § 3604(c) claim. *Id.* at 998. The plaintiffs were readers of *The New York Times* that were African American or Black prospective renters and home buyers seeking housing in the New York metropolitan area. *Id.* The plaintiffs did not allege that any words included in the advertisements showed racial preference, but only that the mere depictions of the human models of particular races were enough to show a possible § 3604(c) violation. *Id.* For twenty years, *The New York Times* was alleged to have published real estate advertisements featuring human models that represented potential home buyers that were almost always White, and never Black. *Id.* The few Black models included in the real estate advertisements were alleged to depict either potential renters or home buyers in predominantly Black communities or individuals such as building maintenance employees, doormen, entertainers, sports figures, or small children. *Id.*

The plaintiffs' allegations stated that *The New York Times*' use of models of particular races in real estate advertisements amounted to a violation of § 3604(c) and conveyed an illegal racial message. *Id.* at 1000. The repeated publishing of

White models and noticeable absence of Black models in the advertisements allegedly indicated the preferred race of the occupants of the building. *Id.* at 998.

The court rejected the argument made by *The New York Times* that only advertisements published that include provocative or blatant expressions of a racial preference are capable of violating § 3604(c). *Id.* at 999. The court held that plaintiffs' complaint could not be dismissed for failure to state a claim because it could potentially be revealed that the usage of certain models of certain races indicated a racial preference. *Id.* at 1001. Racial preference was held by the court to be shown in an advertisement if the advertisement would discourage an ordinary reader of a particular race from answering it. *Id.* at 999–1000. The court stated that a trier of fact may conclude that in some circumstances a twenty year pattern of using models of a particular race for advertisements can be perceived by an ordinary reader as showing a racial preference. *Id.* at 1000–02. The subtle usage of race when using models of a particular race for real estate advertisements was enough to deny the dismissal of plaintiffs' § 3604(c) claim. *Id.*

Unlike the advertisements in *Ragin*, Defendant Lincoln Property Company's advertisements do not involve race or show any sort of racial preference. Defendant Lincoln Property Company simply put in writing its refusal to participate in the voluntary Section 8 housing voucher program. The advertisements in *Ragin*, which

30

are interwoven with signals of possible racial preference because of the race of the models, are unlike Defendant Lincoln Property Company's advertisements that do not incorporate race in any way.

Plaintiff ICP asserts that Defendant's advertisements mentioning "housing vouchers," "Section 8 housing," and "government subsidized rent programs" signal a reference to Black or African American rental applicants. Plaintiff ICP contends that Defendant's advertisements "encourage White non-Hispanic or other non-Black tenants who want to avoid living with Black neighbors to apply for housing" and discourage Black or African American rental applicants from applying for housing. The Court disagrees with Plaintiff ICP.

The population of Section 8 voucher holders in the Dallas, Texas metropolitan area is composed of individuals of different races and colors. One race is not synonymous with the words "Section 8 housing," "government subsidized rent program," or "housing voucher." Defendant Lincoln Property Company's advertisements do not single out a race and state that it rejects housing vouchers or government subsidized rent only from individuals that are of a certain race or color, which would show racial preference or discrimination. *See, e.g.*, *Hunter,* 459 F.2d at 215–16 (holding that an advertisement for a "white home" showed preference and violated § 3604(c)).

Plaintiff ICP also does not provide support to show the advertisements would create the perception to an ordinary reader that African American or Black rental applicants are discouraged to apply for housing or that White rental applicants are encouraged to apply for housing. Plaintiff ICP attempts to support its assertion that a reference to "Section 8" is equivalent to referencing Black or African American rental applicants by alleging that White residents at a McKinney pool incident "taunted the Blacks as being 'Section 8' and needing to leave the pool . . . and go back to their 'Section 8' homes." This "Section 8" classification during this isolated incident, assuming it is true, could have been made for a variety of reasons besides race. Plaintiff ICP fails to convince the Court that an ordinary reader would automatically equate Section 8 housing with Black or African American rental applicants.

Nothing in Defendant Lincoln Property Company's advertisements of its Section 8 policy indicate an underlying racial preference or that race is involved in any way. Unlike the court in *Ragin* that had a subtle, yet unmistakable, racial link because of the particular races of the models in the advertisements for the court to consider when deciding to deny the dismissal of plaintiffs' § 3604(c) claim, Defendant Lincoln Property Company's advertisements have no hidden or facially present racial element. *See Ragin*, 923 F.2d at 999–1002.

Because Defendant Lincoln Property Company's advertisements do not show racial preference, intent to show racial preference, or discriminate based on race, the Court dismisses Plaintiff ICP's § 3604(c) claim.

**VII.    Conclusion**

The Court **GRANTS** Defendant Lincoln Property Company's Motion to Adopt Defendants Brick Apartments LLC's Rule 12(b)(6) Motion to Dismiss and Legacy Multifamily North III LLC and HLI White Rock LLC's Rule 12(b)(6) Motion to Dismiss (Doc. No. 34).   The Court also **GRANTS** Defendants Legacy and HLI White Rock's Motion to Dismiss Complaint for Failure to State a Claim and Brief in Support (Doc. No. 32), Defendant Lincoln Property Company's Motion to Dismiss Pursuant to Federal Rule 12(b)(6) (Doc. No. 33), and CPF PC Riverwalk's Motion to Dismiss ICP's Complaint for Failure to State a Claim and Supporting Brief (Doc. No. 42).   The Court dismisses Plaintiff ICP's Complaint against Defendants Legacy, HLI White Rock, CPF PC Riverwalk, and Lincoln Property Company.

**SO ORDERED.**

Signed August 16th, 2017.

*Ed Kinkeade*
ED KINKEADE
UNITED STATES DISTRICT JUDGE